# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**FILED**

**NOV 02 2018**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| In the Matter of the Search of | |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) ) ) |

Case No.

Assessor Parcel Numbers (APN) 085-270-007-000, 085-270-003-000, and 073-400-012-000, and 13985 Palm Avenue, all in Dos Palos, California

**1: 1 8 SW    0 0 4 3 5 SAB**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached hereto and incorporated herein by reference

located in the _____Eastern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein b reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 841(a)(1); | Manufacture of marijuana, a schedule I controlled substance |
| 21 U.S.C. Section 846 | Conspiracy to manufacture and distribute marijuana, a schedule I controlled substance |

The application is based on these facts:

See Affidavit of Special Agent James Hartnett, attached hereto and incorporated herein by reference

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

James Hartnett, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __1/2/2018__

_____
*Judge's signature*

City and state:  Fresno, California

Stanley A. Boone, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

## I.  AFFIANT'S TRAINING AND EXPERIENCE

I, James Hartnett, Special Agent, U.S. Department of Justice, Drug Enforcement Administration (DEA), being duly sworn, state:

1.      I am a Special Agent (SA) of the United States Department of Justice, Drug Enforcement Administration (DEA).  I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.  I have been employed by the DEA since February, 2016.  Since September 2016, I have been assigned to the DEA's Modesto Resident Office in Modesto, California.  As part of my training, I received sixteen (16) weeks of training in the area of narcotics investigations at the DEA Justice Training Center in Quantico, Virginia.  As part of that training, I learned to identify various controlled substances, including marijuana.

2.      Prior to my employment with DEA, I was employed as a Criminal Investigator for the New York State Department of Taxation & Finance, Criminal Investigations Division ("NYSDTF") and also an Operations Intelligence Analyst in the United States Air Force ("USAF") and Air National Guard ("ANG"). During my time as a Criminal Investigator with NYSDTF, I received academy training in law enforcement and was the lead investigator on over 30 cases. During my combine 10 years in the USAF and ANG, I was a member of numerous squadrons.  Most recently, I was a member of a Security Forces Squadron and was trained and

1

responsible for law enforcement and security at Stewart Air National Guard Base. I completed my Bachelor Degree in May 2014 at Rutgers University with a major in Criminal Justice.

3.      I have been the case agent and assisted other agents and officers in investigations on cases involving violations of Title 21, United States Code, Section 841(a)(1), the manufacture, distribution and possession with intent to distribute controlled substances; and Title 21, United States Code, Section 846, conspiracy to commit the foregoing. Specifically, those investigations have focused on the manufacture and distribution of marijuana, crystal methamphetamine, heroin and cocaine. I am familiar with, and have participated in, conventional investigative methods, including, but not limited to, electronic surveillance, visual surveillance, questioning of witnesses, search warrants, confidential informants, pen registers, and trap and trace. Through my training and experience, I have become acquainted with the identification of various controlled substances, including marijuana, a schedule I controlled substance. I have also become acquainted with the various methods used by individuals to possess, transport, and sell controlled substances in violation of federal law.

4.      As a result of my experience and training, I have had the opportunity to converse with numerous law enforcement officers and drug enforcement officers, informants, as well as admitted and known drug traffickers, including outdoor marijuana growers/traffickers, as to the methods, regarding the manufacture, importation, transportation, distribution and sales of controlled substances. I have been the affiant on federal search and arrest warrants.

5.      Specifically, based on my training and experience, through discussions with experienced narcotics investigators, and through the information I have learned through investigations, I know that most outdoor marijuana cultivation operations are generally conducted in a similar manner. Outdoor marijuana cultivation operations involving large

2

number of marijuana plants require substantial labor to tend to the plants, provide logistical support for the labor force tending to the plants and provide financial support until proceeds for the processed marijuana are received.

6.  Most outdoor marijuana cultivation organizations desire to harvest the plants as early as possible before it becomes too cold in the late fall and early winter.  After the land has been prepared for planting, the marijuana seeds or plants are placed into the ground.  As the marijuana plants mature, more workers arrive at the cultivation site(s) to help with the labor involved in harvesting and processing of the marijuana buds.  The harvested marijuana is moved for pick up by the drivers for delivery to the distribution centers or to the organizations leadership.

7.  Left behind after the completion of harvesting the marijuana plants are materials such as pesticides, herbicides, and fertilizers.  The by-products of marijuana cultivation have the capability of harming the environment and wildlife and contaminating nearby water sources.

8.  I also know based on my training and experience that marijuana cultivators often maintain the following evidence at marijuana cultivation sites or in their residences, sheds, barns, huts, and vehicles located at the grow site or their residence.  Such evidence includes:

a)  Marijuana, in any form (growing, dried, processed, etc.);

b)  Paraphernalia for packaging, processing, cutting, weighing, and distributing controlled substances, such as scales, funnels, sifters, grinders, plastic bags, and heat-sealing devices;

c)  Books, records, receipts, notes, ledgers, and other papers relating to the manufacture, distribution, and possession with intent to distribute marijuana;

3

d)  Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the manufacture, distribution, and possession with intent to distribute marijuana and personal property tending to show the existence and/or location of other stored marijuana, or any other controlled substance, including storage locker receipts, maps, safety deposit keys and corresponding records;

e)  Cash, currency in excess of $2,000, and records relating to controlled substances income and expenditures of money and wealth, for example, money orders, wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks, and check registers;

f)  Documents indicating travel in interstate and foreign commerce, such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts, and telephone bills;

g)  Firearms, ammunition, silencers, and other dangerous weapons;

h)  Photographs, negatives, video tapes, films, undeveloped film and the contents therein, and slides depicting the subjects of the investigation and their criminal associates, their assets and/or controlled substances;

i)  Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the subject premises, such as canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys;

j)  Devices used to communicate with other individuals involved in the manufacture, distribution, and possession with intent to distribute marijuana or any other controlled substance, including cellular telephones, mobile telephones, phone answering machines, telephone

answering machine tapes, beepers or pagers, and devices used to conduct counter-surveillance against law enforcement, such as radio scanners, police radios, surveillance cameras and monitors, anti-bugging devices and devices used to detect the presence of wiretaps, recording devices or transmitters, and/or receipts or literature describing the same; and

k)  Assigned telephone numbers for any and all telephone, cellular telephone, and pagers found on the premises or vehicles, along with telephone toll records, papers, notebooks, and other items, documenting the manufacture, distribution, or possession with intent to distribute marijuana or any other controlled substance, and communications among co-conspirators.

9.     In addition, during the course of searches of marijuana cultivation sites and the living quarters associated with them, I and other agents have also found items of personal property that tend to identify person(s) in a given site or occupancy, control, or ownership thereof.  Such identification evidence is typical of the articles people commonly maintain in their residences, such as leases, rental agreements, photographs, personal telephone books, diaries, and identification documents.

10.     Based upon my training and experience, as well as the collective knowledge and experience of other assisting agents, I am aware that it is generally a common practice for drug traffickers to store their drug inventory and drug-related paraphernalia (as described above) where they reside.  Further, it is generally a common practice for individuals who traffic in large quantities of illicit drugs generally to keep records, proceeds from drug transactions, and other evidence at their residences.  Based on my training and experience, I know that records, in particular, are often maintained by drug traffickers.  Based on my training and experience in investigating drug trafficking organizations, I know that drug traffickers tend to keep their records for a long period of time.  Further, because drug traffickers in many instances will

"front" (that is, sell on consignment) controlled substances to their clients, or alternatively, will be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances.  Often drug traffickers keep "pay and owe" records to show balances due for drugs sold in the past ("pay") and for payments expected ("owe") as to the trafficker's supplier and the trafficker's dealer(s).  Additionally, drug traffickers must maintain telephone and address listings of clients and suppliers and keep them immediately available in order to efficiently conduct their drug trafficking business.

11.     It is also a common practice for traffickers to conceal at their residences large sums of money, either the proceeds from drug sales or monies to be used to purchase controlled substances or items associated with the production of controlled substances.  In this connection, drug traffickers typically make use of wire transfers, cashier's checks, and money orders to pay for controlled substances.  Evidence of such financial transactions and records relating to income and expenditures of money and wealth in connection with drug trafficking would also typically be maintained in residences.

12.     Typically, drug traffickers possess firearms and other dangerous weapons to protect their profits, supply of drugs, and persons from others who might attempt to forcibly take the traffickers' profits and/or supply of drugs.

13.     In a number of searches of residences associated with drug traffickers in prior investigations in which I have been involved, these enumerated types of evidence have been recovered from structures and areas on the property being searched.

14.     My awareness of these drug trafficking practices, as well as my knowledge of drug manufacture and distribution techniques as set forth in this Affidavit, arise from the following:

a) My own involvement in prior drug investigations and searches during my career as a law enforcement agent and officer, as described above;

b) My involvement on a number of occasions in debriefing confidential informants and cooperating individuals in prior drug investigations, as well as what other agents and police officers have advised me when relating the substance of their similar debriefings and the results of their own drug investigations, more particularly described below; and

c) Other intelligence information provided through law enforcement channels, as set out below.

15.     Based on my training and experience, through discussions with experienced narcotics investigators, and through the information I have learned through investigations, I know that most outdoor marijuana cultivation operations are generally conducted in a similar manner.

16.     Outdoor marijuana cultivation operations involving large number of marijuana plants require substantial labor to tend to the plants, provide logistical support for the labor force tending to the plants and provide financial support until proceeds for the processed marijuana are received.

17.     Most outdoor marijuana cultivation organizations desire to harvest the plants as early as possible before it becomes too cold in the late fall and early winter.  After the land has been prepared for planting, the marijuana seeds or plants are placed into the ground.  As the

7

marijuana plants mature, more workers arrive at the cultivation site(s) to help with the labor involved in harvesting and processing of the marijuana buds.  The harvested marijuana is moved for pick up by the drivers for delivery to the distribution centers or to the organizations leadership.

18.     Left behind after the completion of harvesting the marijuana plants are materials such as pesticides, herbicides, and fertilizers.  The by-products of marijuana cultivation have the capability of harming the environment and wildlife and contaminating nearby water sources.

Based on my training, experience, and my participation in other investigations involving large amounts of controlled substances, I know that the following items are commonly found at drug trafficking locations such as outdoor marijuana grow sites:

a. Contraband, proceeds of drug sales, and records of transactions, drug sources, and drug customers,

b. Drug traffickers often possess firearms and other weapons in order to protect themselves, their drugs, and their drug proceeds from others,

c. Drug traffickers usually keep paraphernalia for packaging, cutting, weighing, and distributing controlled substances,

d. Drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and/or telephone numbers of their associates in the drug trafficking organization, even if these items might be in code,

e. Drug traffickers frequently take, or cause to be taken, photographs of themselves, their associates, their property, and their product (controlled substances),

8

f. Drug traffickers often maintain articles of personal property, such as personal identification, personal correspondence, delivery pouches, diaries, checkbooks, notes, photographs, keys, utility bills, and receipts. These items are essential to establish the identities of individuals in control or possession of the premises, residences, vehicles, storage areas, and containers being searched,

g. Drug traffickers will often use cellular telephone and/or pagers to further their criminal activity,

h. Drug traffickers often maintain, on hand, large amounts of U.S. currency in order to maintain and finance their ongoing drug business, and

i. Drug traffickers often travel, sometimes great distances, to manage the production and/or distribution of controlled substances. Documentation of this travel will often be kept at these locations.

19.    My awareness of these drug trafficking practices, as well as my knowledge of drug manufacturing and distribution techniques as set forth in this Affidavit, arise from the following:

a. My training in controlled substance investigations;

b. My past experience in outdoor marijuana cultivation investigations;

c. My involvement in this drug investigation;

d. What other experienced drug agents have advised me when relating the substance of debriefings of confidential informants and cooperating individuals in prior drug investigations and the results of their own drug investigations; and

e. Other information provided through law enforcement channels.

## II. SUMMARY OF INVESTIGATION

20.     This investigation involves a large-scale marijuana cultivation operation located

on 194 acres of land and the owner of the operation, Chad Crivelli, who resides nearby in Dos

Palos in Merced County, within the State and Eastern District of California.

21.     Chad Crivelli purports to be growing "hemp."  However, chemical testing of a

random sample of the marijuana plants revealed a THC percentage of exceeding .3%, the

allowable THC concentration for hemp.

## III. PURPOSE OF AFFIDAVIT

23.     This affidavit is made in support of search warrant application to search the

following:

> •**Location One:  Assessor Parcel Number (APN) 085-270-007-000,** which is
>
> associated with the addresses **13981 and 13669 Palm Avenues, Dos Palos**,
>
> California and consists of farming structures (barns and trailers) and equipment;
>
> **Assessor Parcel Number (APN) 085-270-003-000,** which is a parcel of land in
>
> Dos Palos, California, adjacent to and north of APN 085-270-007-000 and
>
> consists of farm land with growing marijuana plants; and
>
> **Assessor Parcel Number (APN) 073-400-012-000,** which is a parcel of land
>
> in Dos Palos, California, adjacent to and north of APN 085-270-003-000 and
>
> consists of farm land with growing marijuana plants,

collectively referenced herein as the **CRIVELLI FARMLAND,** and

> •**Location Two: 13985 Palm Avenue, Dos Palos, California,** the residence of
>
> Chad Crivelli, referenced herein as the **CRIVELLI RESIDENCE,** and located

10

approximately one-quarter mile south of the **CRIVELLI FARMLAND** at the intersection of Palm Avenue and Hutchins Road.

24.    As set forth below, I submit that there is probable cause to believe that evidence of manufacturing and conspiring to manufacture and distribute marijuana, a schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846, more particularly described in Attachments B-1 and B-2, attached hereto and incorporated herein by this reference, will be found at the **CRIVELLI FARMLAND** and the **CRIVELLI RESIDENCE**, more fully described in Attachments A-1 and A-2, also attached hereto and incorporated herein by this reference.

25.    The facts and information set forth herein are based upon my training, experience, knowledge and observations, observations of other law enforcement personnel, my review of investigative reports, and conversations with federal and state law enforcement officials.  This affidavit is intended to show there is probable cause for the requested search warrant and does not purport to include every fact known to me, rather, only those facts I believe necessary to establish probable cause.

## IV. APPLICABLE LAW

26.    This affidavit sets forth facts that support a probable cause finding that violations of the Controlled Substances Act have occurred, namely violations of Title 21, United States Code, Sections 841(a)(1) and 846 (manufacturing and conspiring to manufacture and distribute marijuana, a schedule I controlled substance).

27.    Title 21, United States Code, Section 841(a) (1), states it is unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent

to manufacture, distribute, or dispense, a controlled substance. Title 21, United States Code, Section 846, states any person who attempts or conspires to commit any offense defined in under Title 21 of the United States Code, shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

## V.  FACTS ESTABLISHING PROBABLE CAUSE

28.     On November 14, 2017, the Merced County Board of Supervisors approved an ordinance prohibiting the outdoor cultivation of marijuana. Merced County Ordinance No. 1955, Chapter 9.29.060 ("Outdoor cultivation of any type, on any parcel is prohibited.  Cultivation for commercial use is also prohibited").[1]

29.     On August 20, 2018, Merced County Sheriff's Office Sergeant Raymond Framstad received information from an anonymous source regarding the cultivation of "hemp" at the dead end of Palm Avenue in Dos Palos.  Sergeant Framstad was familiar with the property based on prior contacts with Chad Crivelli.   Several months earlier, Crivelli had contacted the Merced County Sheriff, Sergeant Framstad, and the Merced Farm Board about his intention of planting "hemp" for the purpose.  Crivelli was advised not to plant hemp until state and local authorities had a registration process in place.

30.     On August 24, 2018, Sergeant Framstad drove to the dead end of Palm Avenue, which is approximately one-quarter mile north of the intersection of Palm Avenue and Hutchins Road.  At that location, he saw what he recognized as live marijuana plants to the north of a large equipment barn and dirt lot used to store farming equipment. Sergeant Framstad is familiar with

---

[1] Any and all references herein to dates and times are to approximate dates and times.

the appearance of marijuana based on his training and experience.[2]  The marijuana plants were approximately two to four feet tall.  While surveying the 194 acres of marijuana plants located directly to the north of the dead end of Palm Avenue, Sergeant Framstad encountered an employee of an irrigation company who advised that he had been hired by Chad Crivelli to irrigate two "hemp" fields.  Soon thereafter, a man drove to where Sergeant Framstad was having his conversation with the irrigation employee.  The man introduced himself as Stephen King. King indicated that he resides in the vicinity of **13669 Palm Avenue** where the structures described in Attachment A-1 are located.  Specifically, he indicated he resides in the RV trailer – the only RV trailer – at that location.  Framstad determined that the trailer is a 1997 white Four Winds RV, bearing Oregon license plate R 735828 and registered to Stephen King at 12875 Williams Highways, 1630 Williams Highway #333 Grants Pass Josephine, Alaska.  Furthermore, King told Sergeant Framstad that the "hemp" plants and seed belong to him and that he was working with Crivelli, on Crivelli's land.  Sergeant Framstad told King that growing the "hemp" is illegal and offered him the chance to destroy the plants to prevent further investigation.

31.     Sergeant Framstad has received records form the Merced County Agricultural Commissioner's Office. These records reveal that Chad Crivelli signed as the applicant for a seasonal pesticide permit for the **CRIVELLI FARMLAND**. The aforementioned permit has Crivelli listed as the Qualified Applicator License.

32.     On September 24, 2018, at 7:58 a.m., Sergeant Framstad, Merced County Sheriff Deputy Raymond Zambrano, Stanislaus Drug Enforcement Agency (SDEA) Agent Glyndon

---

[2] Sergeant Framstad has been a peace officer for more than fifteen years and has completed more than 1,200 hours in training involving the manufacturing, packaging, and distribution of controlled substances, including marijuana.  For the past five years, he has been assigned to the Merced Multi-Agency Narcotic Task Force and has assisted in hundreds of search warrants involving controlled substances.

Wright, and I arrived at the dead end of Palm Avenue in Dos Palos for the purpose of collecting samples of the "hemp" plants.[3] Prior to our arrival, Sergeant Framstad had received consent from Chad Crivelli's attorney, Patrick Goggin, to acquire samples of the "hemp" plants. Sergeant Framstad met with Crivelli, who identified the location as **13981 Palm Avenue**. Sergeant Framstad later determined through ParcelQuest that **13981 Palm Avenue** is associated with **APN 085-270-007-000**, which also encompasses **13669 Palm Avenue**.[4] However, the area associated with **13981 Palm Avenue** is about one-quarter mile to the south near the **CRIVELLI RESIDENCE**. The area where Framstad met with Crivelli was actually associated with **13669 Palm Avenue**, as suggested by public records.[5] This area is also associated with the parcel containing the structures described in Attachment A-1. Crivelli indicated that he would likely harvest his "hemp" and process it in possibly Monterey County, Las Vegas, and perhaps Oregon. However, he was not exactly sure. He also indicated that he intended to keep the THC content of his plants below .3%. I know that marijuana plants that contain .3% or less of THC are considered hemp and, subject to certain conditions, may be lawfully produced. Crivelli further indicated that he had planted "hemp" on a total of 194 acres in two fields, one located where we met with Crivelli and another field behind it. Using ParcelQuest, Framstad determined that the second field was located at **APN 085-270-003-000** and **APN 073-400-012-000**. Crivelli further indicated that he had approximately 500,000 plants growing on both fields.

---

[3] SDEA is a local drug task force. It is not an office of the U.S. Drug Enforcement Administration.

[4] ParcelQuest is a California property database, which is updated daily from the county assessors' offices.

[5] These records are maintained by MDSS GIS Services, an online history of regional data based on public records.

33.     Agent Wright and I obtained ten (10) random samples of the plants from both fields at the **CRIVELLI FARMLAND** for analysis to determine the THC concentration.

34.     While Agent Wright and I collected the samples of marijuana plants, Sergeant Framstad, who was standing nearby on a dirt road, encountered Jenna Mayfield who identified herself as an independent contractor who is the outreach coordinator and field scout for the "hemp" operation. She further indicated that she lives in the Dos Palos area and is responsible for quality control. However, she was unable to provide any information concerning harvest dates and processing locations. She was also unable to provide any DEA registration number or information.

35.     While Mayfield was speaking with Framstad, an individual who identified himself as Stephen King arrived. He claimed to have created the strain of "hemp" that had been planted at the **CRIVELLI FARMLAND** and guaranteed that the THC concentration would not exceed .3%. He further indicated that it was his intent to educate others throughout the United States and Mexico about "hemp."

36.     On October 5, 2018, the DEA Western Regional Laboratory confirmed that the samples that we had collected from the **CRIVELLI FARMLAND** tested positive for marijuana. It then submitted samples to the University of Mississippi, School of Pharmacy, for the purpose of determining the THC concentration. On October 23, 2018, the University of Mississippi reported that the tested samples contained a THC concentration of 2.32 % -- over seven times the permissible limit for hemp.

37.     On October 25, 2018, at 1:13 a.m., Sergeant Framstad conducted an area check of the **CRIVELLI FARMLAND** for any suspicious vehicles to ensure no marijuana plants were being harvested or stolen. When Sergeant Framstad arrived at **CRIVELLI FARMLAND**, he

spoke with Aaron Butcher, who told Sergeant Framstad that he stays on the **CRIVELLI FARMLAND** to watch the "hemp" fields overnight. Butcher said that he had arrived from Alaska to help Stephen King with the "hemp" fields. Butcher also said that there had been a rise of trespassers onto the **CRIVELLI FARMLAND** to steal plants. Sergeant Framstad verified Butcher's identity via his Alaska driver's license. A query of Butcher's records revealed that he had been convicted in Alaska for possessing a controlled substance, a felony. Follow-up investigation by Sergeant Framstad indicated that Butcher, resides in a trailer in the vicinity of **13669 Palm Avenue** in the area with the structures described in Attachment A-1. Specifically, on October 30, 2018, at 7:25 a.m., Sergeant Framstad saw Butcher exit King's RV trailer located in the area with the structured describes in Attachment A-1

38.     On October 27, 2018, Sergeant Framstad conducted surveillance at the **CRIVELLI FARMLAND** and encountered two local farmers, who expressed concerns about their safety. They indicated that there had been a lot of late night traffic in the area of the **CRIVELLI FARMLAND**. They both indicated that they had also expressed their concerns to Crivelli, who told them the "hemp" would be harvested on Monday, October 29, 2018.

39.     On October 28, 2018, Sergeant Framstad obtained a state search warrant to search the **CRIVELLI FARMLAND** for evidence of marijuana cultivation and possession with intent to sell marijuana, in violation of California Health and Safety Code Sections 11358 and 11359.

40.     On October 29, 2018, Sergeant Framstad went to **CRIVELLI FARMLAND** and saw Crivelli harvesting the marijuana plants. Sergeant Framstad provided a copy of the search warrant to Crivelli, but, after determining that his agency did not have sufficient resources to seize the plants, he did not execute the warrant. Instead, Sergeant Framstad advised Crivelli that he is not to harvest, cultivate, or process any of the marijuana plants. Crivelli agreed. Merced

16

County Sheriff's Office deputies are currently working 24-hour security at the **CRIVELLI FARMLAND** to ensure that the 194 acres of marijuana are not harvested, or stolen from trespassers.

41.     Notwithstanding their security efforts, the deputies detected criminal activity in the vicinity of the **CRIVELLI FARMLAND**. On October 30, at 6:30 p.m., the deputies recovered a loaded handgun on property adjacent to **13981 Palm Avenue**, which is part of the **CRIVELLI FARMLAND**. The owner of the neighboring property explained that he has been having an ongoing issue with trespassers on his property crossing into the **CRIVELLI FARMLAND**.

42.     In addition, in the early morning hours of October 31, deputies conducted a vehicle stop on the canal bank of the **CRIVELLI FARMLAND**. The two occupants of the vehicle indicated that they had traveled from the Santa Cruz/Scotts Valley area after learning about the large grow and researching the location on Google maps. They indicated that they intended to fill the back of their compact SUV with marijuana. Hand tools, pruning sheers and work gloves were visible through the rear window. Both occupants were warned and sent on their way.

43.     On October 31, at 4:45 a.m., another deputy noticed a vehicle leaving the area of the **CRIVELLI FARMLAND** at a high rate of speed. The deputy was able to catch up the vehicle and stopped it. The vehicle contained 50 pounds of marijuana. The deputy arrested the driver, who had a local felony warrant, on state drug charges. The deputy issued a citation to one of the passengers for two outstanding warrants and state drug offenses. The second passenger was not arrested. According to the arrestees, the marijuana grow location is popular and several people have been successful in stealing large amounts in the last few weeks.

44. In the early hours of November 1, 2018, deputies noticed five vehicles leaving the area of the **CRIVELLI FARMLAND**. Deputies were able to catch up to one of the vehicles, a van, and stop it. The vehicle contained 220 marijuana plants. All four occupants in the van were arrested on local state felony charges – trespassing, grand theft, and conspiracy.

45. On October 30, 2018, at 6:40 a.m., Sergeant Framstad saw Chad Crivelli exit the front door of the residence at **13985 Palm Avenue** in Dos Palos, the **CRIVELLI RESIDENCE**, and enter a 2013 White Ford F-350 bearing California license plate 05559L1 that is registered to Chad Crivelli at **13985 Palm Avenue**, Dos Palos, California. Framstad then saw Crivelli start the vehicle and proceed northbound on Palm Avenue toward the **CRIVELLI FARMLAND.**

47. Based on the foregoing, I believe Crivelli resides at and/or frequents the **CRIVELLI RESIDENCE**. Furthermore, I believe that Stephen King and Aaron Butcher are staying in the Four Winds RV Trailer described above that is located on the **CRIVELLI FARMLAND**. Accordingly, I submit that there is probable cause to believe that evidence of a drug conspiracy may be located at the **CRIVELLI RESIDENCE** and the Four Winds RV Trailer on the **CRIVELLI FARMLAND**. In addition, while probable cause that a resident of a location has committed a crime is in itself insufficient to satisfy the standard, it is well-established that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986), quoted in *United States v. Gil*, 58 F.3d 1414, 1419 (9th Cir. 1995); *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993); *United States v. Terry*, 911 F.2d 272, 275 (9th Cir. 1990

48. DEA has no record that Crivelli, his attorney, Patrick Goggin, **CRIVELLI FARMLAND**, Mayfield, or King has a DEA registration number to permit the cultivation of marijuana with a THC concentration exceeding .3%. In addition, none of the following

businesses affiliated with Chad Crivelli, identified through public database searches, have a DEA registration number:  Crivelli Fiber Company, LLC (Chad Crivelli listed as registered agent); Crivelli Ranch; Crivelli Fresh, LLC (Chad Crivelli listed as principal); Live Oak Dairy (Chad Crivelli listed as manager); and Chad Crivelli Spraying.

49.     Even if the marijuana plants at the **CRIVELLI FARMLAND** contained a THC concentration of not more than .3%, the **CRIVELLI FARMLAND** is not participating in an agricultural pilot program, as required under the Agricultural Act of 2014, also known as the Farm Bill, to allow for the lawful production of hemp.  **CRIVELLI FARMLAND** is not participating in such a program, because California does not have an agricultural pilot program.

50.     Based on the foregoing, I believe that items identified in Attachment B-1 will likely be found at the **CRIVELLI FARMLAND** and the items identified in Attachment B-2 will likely be found at the **CRIVELLI RESIDENCE.**

## VII.        REQUEST FOR BULK DESTRUCTION

51.     Moreover, I know from my experience and training, and through consultation with other experienced narcotics agents, that fresh bulk marijuana poses an extreme biohazard. Fresh marijuana can harbor mold and other bacterial elements and attract insects and pests, which are harmful to the safety and welfare of those who come into contact with it.  Fresh marijuana also decomposes and liquefies rapidly.  Further, decomposing fresh marijuana emits potent and noxious vapors, which pose health threats to those who are exposed to it.  The fresh bulk marijuana seizures also present inordinate security and storage problems due to the fact the DEA and other law enforcement agencies involved in this investigation do not have the capability to adequately store and preserve the marijuana.  Because of these facts, and because the DEA presently has no adequate, safe storage facilities to store bulk marijuana, I further

request authorization by supplemental order submitted concurrently to dispose of bulk marijuana found at the subject premises.

## VIII.    CONCLUSION

52.    Based on the foregoing, I submit that there is probable cause to believe that evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846, as detailed in Attachment B-1, will be found at the **CRIVELLI FARMLAND** and as detailed in Attachment B-2, will be found at the **CRIVELLI RESIDENCE**.

I swear under penalty of perjury that the facts presented herein are true and accurate to the best of my knowledge.

JAMES HARTNETT
Special Agent
Drug Enforcement Administration

SWORN TO AND SUBSCRIBED BEFORE ME ON
NOVEMBER _____ 2, 2018

STANLEY A. BOONE
U.S. Magistrate Judge

Reviewed and Approved as to Form this 1st Day of November:

/s/ Karen A. Escobar
KAREN A. ESCOBAR
Assistant United States Attorney

# ATTACHMENT A-1

## Area to Be Searched:

**·Location One:**

> **Assessor Parcel Number (APN) 085-270-007-000,** which is associated with the addresses 13981 and 13669 Palm Avenues, Dos Palos, California and consists of farming structures, equipment, and vehicles;

> **Assessor Parcel Number (APN) 085-270-003-000,** which is a parcel of land in Dos Palos, California, adjacent to and north of APN 085-270-007-000 and consists of farm land with growing marijuana plants; and

> **Assessor Parcel Number (APN) 073-400-012-000,** which is a parcel of land in Dos Palos, California, adjacent to and north of APN 085-270-003-000 and consists of farm land with growing marijuana plants,

collectively referenced herein as the **CRIVELLI FARMLAND.**

The aforementioned parcels consist of approximately 194 acres of farm land. The parcels are located approximately one-quarter mile north of the intersection of Palm Avenue and Hutchins Road in Dos Palos, California. The intersection of Palm Avenue and Hutchins Road is also where 13985 Palm Avenue is located, which is outlined in Attachment A-2 as the **CRIVELLI RESIDENCE.** All structures, buildings, and equipment are located on APN 085-270-000 on the west side of Palm Avenue, approximately one-quarter mile north of the intersection of Palm Avenue and Hutchins Road.  This area consists of buildings or structures, vehicles and farming equipment on a dirt plot approximately 700 feet long by 850 feet wide. There are four main structures in this area:

Structure 1—Large open barn with wooden frame structure and gray aluminum siding roof. The inside of this barn contains some non-operational vehicles and several pounds of loose marijuana laying on the ground in the process of drying.

Structure 2—Tool/Equipment/Pesticide Storage building made of stucco with blue window trim, and a gray aluminum siding roof. There is a side sliding door to the west of the building that is blue and made of wood. This door is wide open and leads to the inside of the building. The front door to the building is also of color blue and made of wood. This door is locked with a small padlock and there is a sign that reads, "DANGER Pesticide Storage."

Structures 1 and 2 are attached via an open car port that contains a tan Ford F-250 pick-up truck with California license plate number 8U33513. This carport also has clear and open access points to both Structures 1 and 2.

Structure 3—This large shop building is wide open with no door and it contains large farming/agriculture equipment. It is made of a large wooden structure with a gray aluminum roof.

Structure 4—This is a white single wide mobile trailer with Oregon License plate number R 735828. This trailer is parked just west of Structure 2. The mobile trailer is a 1997 white Four

Winds RV trailer registered to Stephen King at 12875 Williams Highways, 1630 Williams Highway #333 Grants Pass Josephine, Alaska.[1]

This area also contains two large Conex storage boxes. One of the Conex boxes is located toward the rear of the equipment yard. It is dark brown and is secured with two large padlocks. The other Conex box is located behind on the southeast corner of the dirt plot.

Directly to the north of this area is farm land located on APN 085-270-003-000 and APN 085-270-007-000.  Collectively, the parcels consist of approximately 194 acres and has power lines running from north to south through the grow site. The farm land consists of two fields replete with thousands of marijuana plants. The first field, directly to the north of the structures, is approximately one-half mile wide from west to east and one-quarter long from south to north. Directly to the north of the eastern half of the first farming field is the second farming field. It is approximately one-quarter mile wide (from west to east) and one mile long (from south to north). A dirt road divides the 2 fields. Both fields are surrounded by the dirt road.

The search is to include, ANY AND ALL locked or closed outbuildings, grounds, garages, sheds, carports, storage facilities, and containers such as safes, vaults file cabinets, drawers, luggage, briefcases, valises, boxes, jewelry boxes, cans, bags, purses, trash cans, and any other locked or closed hiding places located at and allotted to **the CRIVELLI FARMLAND**.

The search is to include ANY AND ALL vehicles owned or under the immediate control of the residents at the time of the search warrants.

The search is to include the above-described areas, as well as any vehicles parked at the property near or associated with the marijuana cultivation operation.

---

[1] While it appears that the RV is registered to two different addresses, they are listed herein as they appear on the registration record.

CRIVELLI FARM MARIJUANA CULTIVATION SITE VIEW FROM SOUTH SIDE



CRIVELLI FARM MARIJUANA CULTIVATION SITE



CRIVELLI EQUIPMENT AND TANKS



CRIVELLI DARK BROWN CONEX



CRIVELLI CONEX



CRIVELLI STRUCTURE 2



CRIVELLI STRUCTURE 3



CRIVELLI STRUCTURE 1 (LEFT) STRUCTURE 2 (RIGHT)



CRIVELLI STRUCTURE 1



CRIVELLI FARMLAND STRUCTURE 4



# ATTACHMENT A-2

## Area to Be Searched:

**Location Two:  13985 Palm Avenue, Dos Palos, California**

The above-mentioned address is referenced herein as the **CRIVELLI RESIDENCE**. It is located at the northwest corner of the intersection of Palm Avenue and Hutchins Road in Dos Palos, California. The above mentioned address is located approximately one-quarter mile south of the **CRIVELLI FARMLAND,** on the same road, which is outlined in Attachment A-1.The property is gated by a black metal fence. The driveway connects to both Palm Avenue and Hutchins Road. There is a basketball hoop located in front of the garage. The building is tan and red and has a red brick chimney. There are 4 mailboxes, two gray and two black, divided by a red rectangular cube located outside of the black metal fence on the South East corner, facing south.

The search is to include, ANY AND ALL locked or closed outbuildings, grounds, garages, sheds, carports, storage facilities, and containers such as safes, vaults file cabinets, drawers, luggage, briefcases, valises, boxes, jewelry boxes, cans, bags, purses, trash cans, and any other locked or closed hiding places located at and allotted to the **CRIVELLI RESIDENCE**.

The search is to include ANY AND ALL vehicles owned or under the immediate control of the residents at the time of the search warrants.

CRIVELLI RESIDENCE



CRIVELLI RESIDENCE METAL FENCE





CRIVELLI RESIDENCE MAILBOXES



CRIVELLI RESIDENCE VIEW FROM THE EAST



CRIVELLI RESIDENCE VIEW FROM THE SOUTH



CRIVELLI RESIDENCE VIEW FROM NORTH



# ATTACHMENT B-1

## Items To Be Seized

Any item tending to establish and document a conspiracy to manufacture and distribute marijuana and the manufacture of marijuana, a schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, from on or about May 1, 2018 to November 5, 2018, including:

1. Controlled substances, in particular marijuana, and items commonly associated with the packaging and sales of controlled substances, including commercial plastic wrap, plastic bags, film canisters, cutting agents, scissors, scales and/or other weighing devices.

2. Items used for the outdoor cultivation and processing of marijuana, including marijuana seeds, scissors, drying racks, nutrient reservoirs, PVC/poly pipes, hand or backpack sprayers, watering devices, growing mediums, liquid and powder nutrients, fertilizers, potting soil, pots, fungicides, insecticides, herbicides, pruning shears, irrigation supplies (including tubing, connectors, emitters, etc.), shovels and/or other gardening tools, generators, pumps and marijuana cultivation manuals.

3. Evidence of conspiracy, including books, receipts, notes, invoices, charge card and/or credit card statements and summaries, bank statements, records, correspondence, narcotics customer lists, growing schedules, logs, journals, contracts, shopping lists for food and supplies, letters, phone records, phone books, address books, notations and other papers, and any files relating to the cultivating, transporting, selling, storing, ordering, purchasing or distributing of controlled substances.

4. Indicia related to occupancy, residency and or ownership of property, premises, or vehicles.

5. Photographs and /or video recordings and cameras of conspirators, associates, assets and/or controlled substances, in both tangible and electronic forms.

6. Financial records, including expenses incurred in obtaining the equipment and items necessary for the cultivation and/or distribution of controlled substances, income derived from the sales of controlled substances, pay –owe sheets, records of legitimate income (to serve as a baseline to discern excess or unexplained income consistent with proceeds derived from drug trafficking) and general living expenses.

7. Cellular telephones, satellite telephones, personal telephone and address books, iPods/iPads and similar devices, papers and/or other items reflecting names, addresses and telephone numbers of associates in narcotics activities.[1]

8. Devices used to conduct counter surveillance against law enforcement, including scanners, surveillance cameras, night vision devices, FLIR devices, monitors, motion sensors and/or alarms, recording devices and/or receipts or literature describing the same.

9. Firearms, ammunition and other firearms-related items commonly used by drug traffickers to protect themselves or their contraband.

10. Devices, equipment and maps used to identify and/or mark potential sites and for land navigation, to include both tangible media and electronic media, such as GPS devices, maps, charts, drawings and written directions or instructions related to areas suspected of containing marijuana cultivation operations.

11. Cash, currency in excess of $5,000.00

12. Documents indicating travel in intrastate, interstate, and foreign commerce, such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts and telephone bills.

---

[1] A separate search warrant will be sought to search any electronic devices seized pursuant to this search warrant.

# ATTACHMENT B-2

## Items To Be Seized

Any item tending to establish and document a conspiracy to manufacture and distribute marijuana and the manufacture of marijuana, a schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, from on or about May 1, 2018 to November 5, 2018, including:

1. Controlled substances, in particular marijuana, and items commonly associated with the packaging and sales of controlled substances, including commercial plastic wrap, plastic bags, film canisters, cutting agents, scissors, scales and/or other weighing devices

2. Still photographs, graphic images, slides, video clips, visual mediums, and any record, file, or data of their origins, that are evidence of the violations set forth in paragraph 1 above;

3. Items used for the outdoor cultivation and processing of marijuana, including marijuana seeds, scissors, drying racks, nutrient reservoirs, PVC/poly pipes, hand or backpack sprayers, watering devices, growing mediums, liquid and powder nutrients, fertilizers, potting soil, pots, fungicides, insecticides, herbicides, pruning shears, irrigation supplies (including tubing, connectors, emitters, etc.), shovels and/or other gardening tools, generators, pumps and marijuana cultivation manuals

4. Telephones, including cellular telephones, pagers, beepers, answering machines, and other communication devices, and communication device documentation (*e.g.*, customer

service records, billing statements, credit information, toll records, etc.) potentially utilized by Chad Crivelli. [1]

5. Evidence of conspiracy, including books, receipts, notes, invoices, charge card and/or credit card statements and summaries, bank statements, records, correspondence, narcotics customer lists, growing schedules, logs, journals, contracts, shopping lists for food and supplies, letters, phone records, phone books, address books, notations and other papers, and any files relating to the cultivating, transporting, selling, storing, ordering, purchasing or distributing of controlled substances.

6. Indicia related to occupancy, residency and/or ownership of property, premises, or vehicles.

7. Financial records, including expenses incurred in obtaining the equipment and items necessary for the cultivation and/or distribution of controlled substances, income derived from the sales of controlled substances, pay –owe sheets, records of legitimate income (to serve as a baseline to discern excess or unexplained income consistent with proceeds derived from drug trafficking) and general living expenses.

8. Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money containers, financial records and notes, which were created, modified, or stored in any form, including on any digital device, and which show payment, receipt, concealment, transfer, or movement of money generated from the sale of controlled substances;

---

[1] A separate search warrant will be sought to search any electronic devices seized pursuant to this search warrant.

9.  Devices used to conduct counter surveillance against law enforcement, including scanners, surveillance cameras, night vision devices, FLIR devices, monitors, motion sensors and/or alarms, recording devices and/or receipts or literature describing the same.

10. Firearms, ammunition and other firearms-related items commonly used by drug traffickers to protect themselves or their contraband.

11. Cash, currency in excess of $5,000.00

12. Documents indicating travel in intrastate, interstate, and foreign commerce, such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts and telephone bills.





AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Assessor Parcel Numbers (APN) 085-270-007-000, 085-270-003-000, and 073-400-012-000, and 13985 Palm Avenue, all in Dos Palos, California | ) ) ) |

Case No. 1:18 SW   0 0 4 3 5 SAB

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached hereto and incorporated herein by reference

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference

**YOU ARE COMMANDED** to execute this warrant on or before  *November 16 2018* (not to exceed 14 days)
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____any Duty Magistrate Judge_____
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued:  *11/2/2018 @ 10:30 am*                    _____
                                                                                              *Judge's signature*

City and state:      Fresno, California                    Stanley A. Boone, U.S. Magistrate Judge
                                                                                              *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A-1

## Area to Be Searched:

▪**Location One:**

      **Assessor Parcel Number (APN) 085-270-007-000,** which is
associated with the addresses 13981 and 13669 Palm Avenues, Dos Palos,
California and consists of farming structures, equipment, and vehicles;

      **Assessor Parcel Number (APN) 085-270-003-000,** which is a parcel of land in
Dos Palos, California, adjacent to and north of APN 085-270-007-000 and
consists of farm land with growing marijuana plants; and

      **Assessor Parcel Number (APN) 073-400-012-000,** which is a parcel of land
in Dos Palos, California, adjacent to and north of APN 085-270-003-000 and
consists of farm land with growing marijuana plants,

collectively referenced herein as the **CRIVELLI FARMLAND.**

The aforementioned parcels consist of approximately 194 acres of farm land. The parcels are
located approximately one-quarter mile north of the intersection of Palm Avenue and Hutchins
Road in Dos Palos, California. The intersection of Palm Avenue and Hutchins Road is also
where 13985 Palm Avenue is located, which is outlined in Attachment A-2 as the **CRIVELLI
RESIDENCE.** All structures, buildings, vehicles, and equipment are located on APN 085-270-
000 on the west side of Palm Avenue, approximately one-quarter mile north of the intersection of
Palm Avenue and Hutchins Road.  This area consists of buildings or structures, vehicles and
farming equipment on a dirt plot approximately 700 feet long by 850 feet wide. There are four
main structures in this area:

Structure 1—Large open barn with wooden frame structure and gray aluminum siding roof. The
inside of this barn contains some non-operational vehicles and several pounds of loose marijuana
laying on the ground in the process of drying.

Structure 2—Tool/Equipment/Pesticide Storage building made of stucco with blue window trim,
and a gray aluminum siding roof. There is a side sliding door to the west of the building that is
blue and made of wood. This door is wide open and leads to the inside of the building. The front
door to the building is also of color blue and made of wood. This door is locked with a small
padlock and there is a sign that reads, "DANGER Pesticide Storage."

Structures 1 and 2 are attached via an open car port that contains a tan Ford F-250 pick-up truck
with California license plate number 8U33513. This carport also has clear and open access points
to both Structures 1 and 2.

Structure 3—This large shop building is wide open with no door and it contains large
farming/agriculture equipment. It is made of a large wooden structure with a gray aluminum
roof.

Structure 4—This is a white single wide mobile trailer with Oregon License plate number R
735828. This trailer is parked just west of Structure 2. The mobile trailer is a 1997 white Four

Winds RV trailer registered to Stephen King at 12875 Williams Highways, 1630 Williams Highway #333 Grants Pass Josephine, Alaska.[1]

This area also contains two large Conex storage boxes. One of the Conex boxes is located toward the rear of the equipment yard. It is dark brown and is secured with two large padlocks. The other Conex box is located behind on the southeast corner of the dirt plot.

Directly to the north of this area is farm land located on APN 085-270-003-000 and APN 085-270-007-000. Collectively, the parcels consist of approximately 194 acres and has power lines running from north to south through the grow site. The farm land consists of two fields replete with thousands of marijuana plants. The first field, directly to the north of the structures, is approximately one-half mile wide from west to east and one-quarter long from south to north. Directly to the north of the eastern half of the first farming field is the second farming field. It is approximately one-quarter mile wide (from west to east) and one mile long (from south to north). A dirt road divides the 2 fields. Both fields are surrounded by the dirt road.

The search is to include, ANY AND ALL locked or closed outbuildings, grounds, garages, sheds, carports, storage facilities, and containers such as safes, vaults file cabinets, drawers, luggage, briefcases, valises, boxes, jewelry boxes, cans, bags, purses, trash cans, and any other locked or closed hiding places located at and allotted to **the CRIVELLI FARMLAND**.

The search is to include ANY AND ALL vehicles owned or under the immediate control of the residents at the time of the search warrants.

The search is to include the above-described areas, as well as any vehicles parked at the property near or associated with the marijuana cultivation operation.

---

[1] While it appears that the RV is registered to two different addresses, they are listed herein as they appear on the registration record.

CRIVELLI FARM MARIJUANA CULTIVATION SITE VIEW FROM SOUTH SIDE



CRIVELLI FARM MARIJUANA CULTIVATION SITE



CRIVELLI EQUIPMENT AND TANKS



CRIVELLI DARK BROWN CONEX



CRIVELLI CONEX



CRIVELLI STRUCTURE 2



CRIVELLI STRUCTURE 3



CRIVELLI STRUCTURE 1 (LEFT) STRUCTURE 2 (RIGHT)



CRIVELLI STRUCTURE 1



CRIVELLI FARMLAND STRUCTURE 4



# ATTACHMENT A-2

## Area to Be Searched:

**Location Two:  13985 Palm Avenue, Dos Palos, California**

The above-mentioned address is referenced herein as the **CRIVELLI RESIDENCE**. It is located at the northwest corner of the intersection of Palm Avenue and Hutchins Road in Dos Palos, California. The above mentioned address is located approximately one-quarter mile south of the **CRIVELLI FARMLAND,** on the same road, which is outlined in Attachment A-1. The property is gated by a black metal fence. The driveway connects to both Palm Avenue and Hutchins Road. There is a basketball hoop located in front of the garage. The building is tan and red and has a red brick chimney. There are 4 mailboxes, two gray and two black, divided by a red rectangular cube located outside of the black metal fence on the South East corner, facing south.

The search is to include, ANY AND ALL locked or closed outbuildings, grounds, garages, sheds, carports, storage facilities, and containers such as safes, vaults file cabinets, drawers, luggage, briefcases, valises, boxes, jewelry boxes, cans, bags, purses, trash cans, and any other locked or closed hiding places located at and allotted to the **CRIVELLI RESIDENCE.**

The search is to include ANY AND ALL vehicles owned or under the immediate control of the residents at the time of the search warrants.

CRIVELLI RESIDENCE



CRIVELLI RESIDENCE METAL FENCE





CRIVELLI RESIDENCE MAILBOXES



CRIVELLI RESIDENCE VIEW FROM THE EAST



CRIVELLI RESIDENCE VIEW FROM THE SOUTH



CRIVELLI RESIDENCE VIEW FROM NORTH



# ATTACHMENT B-1

## Items To Be Seized

Any item tending to establish and document a conspiracy to manufacture and distribute marijuana and the manufacture of marijuana, a schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, from on or about May 1, 2018 to November 5, 2018, including:

1. Controlled substances, in particular marijuana, and items commonly associated with the packaging and sales of controlled substances, including commercial plastic wrap, plastic bags, film canisters, cutting agents, scissors, scales and/or other weighing devices.

2. Items used for the outdoor cultivation and processing of marijuana, including marijuana seeds, scissors, drying racks, nutrient reservoirs, PVC/poly pipes, hand or backpack sprayers, watering devices, growing mediums, liquid and powder nutrients, fertilizers, potting soil, pots, fungicides, insecticides, herbicides, pruning shears, irrigation supplies (including tubing, connectors, emitters, etc.), shovels and/or other gardening tools, generators, pumps and marijuana cultivation manuals.

3. Evidence of conspiracy, including books, receipts, notes, invoices, charge card and/or credit card statements and summaries, bank statements, records, correspondence, narcotics customer lists, growing schedules, logs, journals, contracts, shopping lists for food and supplies, letters, phone records, phone books, address books, notations and other papers, and any files relating to the cultivating, transporting, selling, storing, ordering, purchasing or distributing of controlled substances.

4. Indicia related to occupancy, residency and or ownership of property, premises, or vehicles.

5. Photographs and /or video recordings and cameras of conspirators, associates, assets and/or controlled substances, in both tangible and electronic forms.

6. Financial records, including expenses incurred in obtaining the equipment and items necessary for the cultivation and/or distribution of controlled substances, income derived from the sales of controlled substances, pay –owe sheets, records of legitimate income (to serve as a baseline to discern excess or unexplained income consistent with proceeds derived from drug trafficking) and general living expenses.

7. Cellular telephones, satellite telephones, personal telephone and address books, iPods/iPads and similar devices, papers and/or other items reflecting names, addresses and telephone numbers of associates in narcotics activities.[1]

8. Devices used to conduct counter surveillance against law enforcement, including scanners, surveillance cameras, night vision devices, FLIR devices, monitors, motion sensors and/or alarms, recording devices and/or receipts or literature describing the same.

9. Firearms, ammunition and other firearms-related items commonly used by drug traffickers to protect themselves or their contraband.

10. Devices, equipment and maps used to identify and/or mark potential sites and for land navigation, to include both tangible media and electronic media, such as GPS devices, maps, charts, drawings and written directions or instructions related to areas suspected of containing marijuana cultivation operations.

11. Cash, currency in excess of $5,000.00

12. Documents indicating travel in intrastate, interstate, and foreign commerce, such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts and telephone bills.

---

[1] A separate search warrant will be sought to search any electronic devices seized pursuant to this search warrant.

# ATTACHMENT B-2

## Items To Be Seized

Any item tending to establish and document a conspiracy to manufacture and distribute marijuana and the manufacture of marijuana, a schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, from on or about May 1, 2018 to November 5, 2018, including:

1. Controlled substances, in particular marijuana, and items commonly associated with the packaging and sales of controlled substances, including commercial plastic wrap, plastic bags, film canisters, cutting agents, scissors, scales and/or other weighing devices

2. Still photographs, graphic images, slides, video clips, visual mediums, and any record, file, or data of their origins, that are evidence of the violations set forth in paragraph 1 above;

3. Items used for the outdoor cultivation and processing of marijuana, including marijuana seeds, scissors, drying racks, nutrient reservoirs, PVC/poly pipes, hand or backpack sprayers, watering devices, growing mediums, liquid and powder nutrients, fertilizers, potting soil, pots, fungicides, insecticides, herbicides, pruning shears, irrigation supplies (including tubing, connectors, emitters, etc.), shovels and/or other gardening tools, generators, pumps and marijuana cultivation manuals

4. Telephones, including cellular telephones, pagers, beepers, answering machines, and other communication devices, and communication device documentation (*e.g.*, customer

service records, billing statements, credit information, toll records, etc.) potentially utilized by Chad Crivelli. [1]

5. Evidence of conspiracy, including books, receipts, notes, invoices, charge card and/or credit card statements and summaries, bank statements, records, correspondence, narcotics customer lists, growing schedules, logs, journals, contracts, shopping lists for food and supplies, letters, phone records, phone books, address books, notations and other papers, and any files relating to the cultivating, transporting, selling, storing, ordering, purchasing or distributing of controlled substances.

6. Indicia related to occupancy, residency and/or ownership of property, premises, or vehicles.

7. Financial records, including expenses incurred in obtaining the equipment and items necessary for the cultivation and/or distribution of controlled substances, income derived from the sales of controlled substances, pay –owe sheets, records of legitimate income (to serve as a baseline to discern excess or unexplained income consistent with proceeds derived from drug trafficking) and general living expenses.

8. Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money containers, financial records and notes, which were created, modified, or stored in any form, including on any digital device, and which show payment, receipt, concealment, transfer, or movement of money generated from the sale of controlled substances;

---

[1] A separate search warrant will be sought to search any electronic devices seized pursuant to this search warrant.

9.  Devices used to conduct counter surveillance against law enforcement, including scanners, surveillance cameras, night vision devices, FLIR devices, monitors, motion sensors and/or alarms, recording devices and/or receipts or literature describing the same.

10. Firearms, ammunition and other firearms-related items commonly used by drug traffickers to protect themselves or their contraband.

11. Cash, currency in excess of $5,000.00

12. Documents indicating travel in intrastate, interstate, and foreign commerce, such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts and telephone bills.